IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL A. LATIMORE, ) | CASE NO.: 1:11 CV 272 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE FARM FIRE AND CASUALTY, ) | AND ORDER |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the Parties Cross Motions for summary judgment. (ECF #31 and #34).  For the reasons that follow, Defendants' Motion for Summary Judgment (ECF #31) is granted and Plaintiffs's Motion (ECF #34) is denied.

**FACTS**[1]

Plaintiff Michael Latimore brings this action against State Farm Fire and Casualty Company ("State Farm") alleging claims of breach of contract and bad faith arising from State Farm's denial of Plaintiff's claim for coverage of his losses sustained when a fire and theft occurred at his insured residence located at 176 Quincy Street, Mansfield, Ohio.

State Farm issued a homeowner's insurance policy ("the Policy") to Plaintiff for the property located at 176 Quincy Street, Mansfield Ohio ("the Property") on November 5, 2008

---

[1] Plaintiff has also filed a Motion to Strike the declarations of Scott Hedges and Linda Ratliff on the grounds that they contain hearsay statements, unfounded assertions and are inadmissible as noncompliant with Fed. R. Civ. P. 56(c)(4). The Court has reviewed Plaintiff's motion and supporting material and Defendant's opposition.  After careful consideration, the Court finds that the declarations are compliant with Fed. R. Civ. P. 56(c)(4) and the Federal Rules of Evidence.  Accordingly, Plaintiff's Motion to Strike (ECF #49) is denied.

that established coverages for his dwelling ($143,600), personal property ($107,700) and, pursuant to an elected option, jewelry ($2,500). Plaintiff paid his yearly premium of $762.  A year later Plaintiff renewed the Policy.  The fire occurred during the second policy year on December 16, 2009. State Farm acknowledges that the Policy was effective on Plaintiff's date of loss.

The fire occurred in the evening of December 16, 2009 while Plaintiff was at work. The dwelling sustained damage from flame, smoke and water. Plaintiff filed a claim for damage to the dwelling and loss of contents under the Policy. As Plaintiff had advised State Farm that he believed the house had been burglarized and the loss may have been caused by arson, State Farm retained Origin and Cause expert Scott Bennett of Fire Investigation Services to investigate the origin and cause of the fire. Mr. Bennett concluded that based upon the fire and smoke patterns, the fire was intentionally set.

Shortly after the fire, Plaintiff met with several State Farm representatives with respect to his claim. He was told to submit personal property inventory forms itemizing the contents lost, damaged or destroyed in the fire.  Plaintiff states that both Mr. Gilke and Mr. Hedges of State Farm told him to prepare the forms using replacement costs, what he would have to pay to replace the property if he were buying it today.  He states that they told him to check the prices of similar items in stores or online. Plaintiff also answered questions in a lengthy recorded interview called an Examination Under Oath ("EUO").  Plaintiff also states that he missed a day of work to drive to Columbus for an examination at the office of Attorney Timothy Ryan, counsel for State Farm.  Also present at the hours long interview was Mr. Hedges.  The interview was transcribed by a court reporter. Plaintiff was not represented by counsel at that time.

On June 10, 2010, at the conclusion of its investigation, State Farm denied Plaintiff's fire loss claim based upon its findings that Plaintiff breached the "Concealment or Fraud" provision of the Policy by making material misrepresentations in the course of State Farm's investigation and breached the "Intentional Acts" provision by his involvement in intentionally causing the fire to occur.[2] Specifically, State Farm contends that Plaintiff misrepresented his financial condition at the time of the fire loss; misrepresented whether valuable jewelry was lost in the fire; and admitted that he made misrepresentations to State Farm during the investigation of the fire.

The Policy contains a Mortgage Clause which states part: "[i]f we deny your claim, that denial shall not apply to a valid claim of the mortgagee. ... If we pay the mortgagee for any loss and deny payment to you: (1) we are subrogated to all rights of the mortgagee granted under the mortgage on the property." (Policy, Section I, Conditions, 10). Wealthbridge Mortgage Corporation advised State Farm that it had purchased Plaintiff's mortgage and submitted a sworn proof of loss as the mortgagee/loss payee on the Policy. After subtracting the deductible and deductions for demolition liens, State Farm tendered payment to Wealthbridge in the amount of $55,561.12 for the loss.

Plaintiff filed this action on January 11, 2011 in the Court of Common Pleas, for Richland County, Ohio. Defendants removed the action to this Court on February 8, 2011. State

---

[2] State Farm moves for summary judgment based solely upon its alternative argument that Plaintiff violated the "Concealment or Fraud" provision, not the "Intentional Acts" provision. Thus, while its own motion makes it appear that it has abandoned its contention that Plaintiff was involved in intentionally causing the fire as support for its denial of Plaintiff's claim, it defends and supports its reliance on the "Intentional Acts" provision in its response to Plaintiff's Motion.

3

Farm has asserted a counterclaim seeking to recover against Plaintiff, the amounts paid to Wealthbridge. State Farm's Motion for Summary Judgment seeks judgment on Plaintiff's Complaint but not on its own Counterclaim. Plaintiff's Motion for Partial Summary Judgment seeks judgment on the issues of liability on his contract and bad faith claims and on State Farm's Counterclaim. The parties' motions for summary judgment are fully briefed and ready for decision.

## **STANDARD OF REVIEW**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d

4

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred

with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Fed. R. Civ. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining

whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **ANALYSIS**

Moving first to Plaintiff's breach of contract claim, State Farm asserts that the Policy at issue requires a lack of "concealment or fraud" as a condition to coverage. Specifically, The "conditions" portion of Sections I and II of the Policy mandates certain duties with which the insured must comply in the event of loss including:

> 2. Concealment or Fraud. This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after the loss.

(Policy, Sections I and II, Conditions, 2. Concealment or Fraud, p. 19) Further, the Policy provides that no one may bring a legal action against State Farm under the Policy unless "there has been compliance with the policy provisions." (Policy, Section I, Conditions, 6. Suit Against Us, p. 14). Thus, State Farm argues that under the express terms of the Policy, Plaintiff was required as a condition to recovering under the Policy not to make material misrepresentations in the course of State Farm's investigation of his alleged loss. However, since Plaintiff made material misrepresentations in the course of State Farm's investigation, State Farm concludes that it is entitled to Summary Judgment on Plaintiff's breach of contract claim.

Concealment or fraud clauses are fully enforceable under Ohio law. *Taylor v. State Farm Fire & Casualty Co.*, Case No. 3:11CV1714 (N.D. Ohio May 10, 2012) citing *Smith v. Allstate Indem. Co.*, 304 Fed Appx. 430, 431-32 (6th Cir. 2008)(unpublished disposition). *See also,*

7

*Rainer v. Century Surety Insurance Co.*, 1990 Ohio App. LEXIS 2504, at *14 (4th Dist. June 22, 1990); *McNew v. New Hampshire Ins. Co.*, No. 3-89-26, 1991 Ohio App. LEXIS 1500, at *9-*10 (3d Dist. Mar. 25, 1991). "[A] misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." *Abon, Ltd. v. Transcon. Ins. Co.*, 2005 WL 1414486, *13 (Ohio App. 2005)(unreported disposition) (quoting Long v. Ins. Co. of N. Am., 670 F.2d 930, 934 (10th Cir. 1982)). A material misrepresentation is one "that significantly affects the rights or obligations of the insurer." *Parker v. State Farm & Cas. Co.*, 1988 WL 1058394, *3 (N.D. Ohio) (quoting *Mamco, Inc. v. American Employers Ins. Co.*, 736 F.2d 187, 190 n.6 (5th Cir. 1984).

State Farm asserts that Plaintiff made multiple misrepresentations regarding his financial condition at the time of the fire. For instance, Plaintiff misrepresented that he was current on his utility bills and said that he did not know about a $962 delinquent water bill until after the fire. However, Plaintiff later admitted that he received notice of the delinquent water bill in November 2009, before the fire occurred. In addition, State Farm states that Plaintiff failed to disclose the existence of numerous collection accounts and a monetary judgment against him. In his recorded statement, Plaintiff said that he did not owe any past due accounts, other than $300 on a Capital One account and $800 on a Capital One credit account. He stated that he did not have any outstanding liens or judgments against him and had never been involved in a lawsuit. When State Farm pulled his credit report during the investigation, it learned that Plaintiff had 19 collection accounts totaling approximately $4,400. Specifically, the credit report showed a January 2009 collection account with First Energy in the amount of $179, a July 2009 collection account from First Energy in the amount of $827, thirteen separate medical collection accounts

8

and four other collection accounts.  A check of the Mansfield County Clerk of Courts docket revealed a "Consent Judgment Entry" entered against Plaintiff in the amount of $897.14, dated October 23, 2009. The Consent Judgment had been signed by Plaintiff approximately two months before the fire. Finally, State Farm states that Plaintiff misrepresented and substantially understated the arrearages on his multiple mortgages.  In his Recorded Statement, Plaintiff states that he was approximately 7 to 12 months behind on his mortgages. However, the credit report revealed that he was approximately 18 months in arrears on one mortgage, and approximately 25 months behind on another mortgage.

In addition to his misrepresentations regarding his financial condition, State Farm also asserts that Plaintiff made misrepresentations regarding the loss of multiple items in the fire. State Farm states that Plaintiff claimed loss for 12 items of jewelry, two necklaces, six rings, one bracelet, and three watches in his personal property inventory forms. ("PPIF"). Plaintiff listed the total replacement cost value of the jewelry at $8,062.94. Other than a $159 watch that was three years old, Plaintiff listed all other jewelry as either one or two years old. State Farm contends that Plaintiff misrepresented the value of this jewelry because Plaintiff did not have the financial ability to purchase the approximately $8,000 worth of jewelry in the last three years. Plaintiff admitted that the total cost of the jewelry to him was approximately $3,000 in a two to three year period. When State Farm questioned Plaintiff regarding how he could pay for the expensive jewelry when he could not pay his mortgages, Plaintiff admitted he could not have purchased the jewelry.

Further, State Farm notes that Plaintiff did not know how much he had paid for the jewelry. At times Plaintiff named a specific price he paid for certain pieces and then later

testified that he did not know how much he paid, and that he was being sarcastic when he previously provided costs. Plaintiff later testified that "I don't know what I actually paid for none of this." He finally settled on an estimate of approximately $3,000. State Farm contends that Plaintiff's failure to testify to the alleged cost of the jewelry demonstrates that he did not actually buy it.

State Farm also notes that Plaintiff testified that he bought a bracelet for $692.36 and a watch for $368 at Seven Day West in Detroit. Plaintiff stated that he purchased one item on a lay away plan, such that he would expect the vendor to have a record of the sale and payments. State Farm asked plaintiff for contact information for Seven Day West and in response Plaintiff provided contact information for a store called Golden Age Jewelry. State Farm contacted the owner of Golden Age Jewelry and discovered that Plaintiff did not purchase any jewelry from that store and the store would have retained a record of any purchase transaction.

Next, State Farm relates how Plaintiff testified at length that he was the person who bought the jewelry, noting that he purchased some of it at flea markets and some at Seven Day West in Detroit. After conceding that he could not have paid for the jewelry in the three year period he claimed, he changed his story and testified that his girlfriend bought the jewelry. State Farm notes that both explanations testified to by Plaintiff cannot be true.

Finally, after extensive discussions regarding the value of the jewelry, Plaintiff testified that the jewelry may not have been lost or damaged at all. Thus, State Farm contends that despite the fact that Plaintiff submitted a sworn Statement in Proof of Loss claiming entitlement to $44,197.81 for contents, he later testified that the claimed contents, including jewelry, might not have been damaged at all.

10

Lastly, State Farm asserts that Plaintiff admitted that he made misrepresentations to State Farm in the course of its investigation of the fire loss. Specifically, when a pattern of misrepresentations became clear, Plaintiff admitted in his examination under oath that approximately 60% of the answers he had provided to State Farm in his January 4, 2010 recorded statement were false. He admitted that he made misrepresentations regarding his finances, his past due water bill, his girlfriend's whereabouts immediately before the fire, and his mortgages arrearages. State Farm notes that these misrepresentations were intentional because Plaintiff admitted he had not been truthful in the course of State Farm's investigation because he did not like being investigated. Plaintiff responds that he did state that "percentage wise, maybe 60% of his [1/4/2010] I guess" was inaccurate but that it was because he was upset that State Farm was questioning his claim, not because he was angry. He states that he told State Farm in response to its question whether he was intentionally misstating in this statement–he answered no, not intentionally.

Plaintiff responds to State Farm's listing of his misrepresentations by stating that the misrepresentations were not material nor were they prejudicial to State Farm. Further, Plaintiff states that he had to complete the personal property inventory forms with limited access to his damaged contents and was instructed by State Farm to get replacement prices from stores and online by looking at similar items.  He further states that he was not told that he could add more property or change prices on the inventory forms if he discovered that the replacement costs were higher than he had originally written down. Moreover, he claims that he was never told that State Farm may deny his claim if he used a replacement cost that was too high.

More specifically, Plaintiff states that he disclosed two credit card debts and some

11

medical bills that he guessed were about $150 and admitted that there were probably other past due bills at the time of the fire. Without his records in front of him, Plaintiff claims that he made guesses with respect to the amounts he owed. With respect to the water bill, Plaintiff stated that his water bill was about $962 and that he had gotten notice that he would have to pay it "last Wednesday." Plaintiff actually paid the water bill on December 23, 2009 and clarified his recorded statement that he became aware of the water bill in November 2009. In any event, Plaintiff argues that any financial misrepresentations were immaterial and did not affect State Farm's investigation because State Farm received complete financial data (his credit report) three days later. State Farm counters that these arguments do not refute Plaintiff's misrepresentations as to the numerous collection accounts against him.

While Plaintiff states that he told State Farm his mortgages on his two properties were in arrears about 7-12 months, he was uncertain because his payments were being renegotiated because he was unable to stay current. As to the civil lawsuit and judgment, Plaintiff states that his misrepresentation was unintentional because the consent judgment discovered by State Farm was from an agreement with his former bank to pay the $800 debt in $100 monthly installments. He was not served with process and did not hire a lawyer and did not equate the one page agreement as a lawsuit. State Farm responds that he signed the consent judgment only two months before the fire thus his "forgetting" it was not unintentional. As to the mortgage arrearages, State Farm argues that there is a significant discrepancy between his 7-12 month guess and the actual 18-25 month arrearages.

Plaintiff contends that the discrepancy between the estimated replacement cost of $8000 for the jewelry and State Farm's later estimates of amounts paid are not admissions or

12

misrepresentations but the result of different types of valuations.  Moreover, he contends that the name of the store where the jewelry was purchased or whether Plaintiff or his girlfriend bought it is immaterial. State Farm responds that Plaintiff's failure to testify to the alleged cost of the jewelry or who actually purchased it, and his later statement that some of the jewelry may not have been lost at all supports its belief that Plaintiff misrepresented the loss of several items of jewelry because these statements show that he never purchased the jewelry at all.

Misrepresentations regarding an insured's financial condition or items lost in a fire constitute material misrepresentations. *Taylor v. State Farm Fire & Casualty Co.*, Case No. 3:11CV1714 at p. 6, (N.D. Ohio May 10, 2012) citing *Parker v. State Farm Fire & Cas. Co.*, No. C87-2683, 1988 U.S. Dist. LEXIS 19521, at *12, *13 (N.D. Ohio Nov. 4, 1988) ("Statements of an insured misrepresenting the extent of loss . . . are clearly material since they affect the extent of the insurer's obligation to pay for a claim loss" and "[t]he financial status of the insured is a material circumstance pertaining to a possible motive of the insured to procure a loss in order to collect on a policy."); *Saracco v. Vigilant Ins. Co.*, No. 99-3502, 2000 U.S. Dist.LEXIS 1685, *19-*20 (E.D. Pa. Feb. 22, 2000) (holding an insured's misrepresentations regarding the threatened foreclosure and his financial condition were "material" because they were relevant to the insured's motive in the insurer's arson investigation, and stating "a reasonable insurance company would attach importance to an insured's attempts to recover for property not included in a policy."); *Excelsior Ins. Co. V. Mitchell*, No., 05-5987, 2008 U.S. Dist. LEXIS 100695, at *5 (E.D. Pa. 2008)("as a matter of law, the insured's financial condition is material and relevant to the issue whether a motive for insurance fraud existed.").

In this case it is clear that Plaintiff made and admitted to a number of material

misrepresentations during the investigation of his fire loss. While Plaintiff attempts to explain that all of his misrepresentations were harmless or could be justified by his lack of documentation and access to his records, his story was ever changing and inconsistent. Moreover, his consistent efforts to minimize his financial problems, including the size and duration of his mortgages arrearages and the number of collection accounts against him and the fact that he had a consent judgment were material to State Farm's efforts to investigate this intentional fire. Specifically, State Farm contends that Plaintiff's misrepresentations about his financial condition misled State Farm in its investigation of whether Plaintiff's desperate financial condition gave him a motive to burn down his own house and commit insurance fraud. Further, Plaintiff's repeated misrepresentations about the items that were actually lost or damaged in the fire, especially the alleged expensive jewelry, were material because it impacted any amounts that State Farm would be obligated to pay under the Policy.  In sum, Plaintiff's misrepresentations were numerous and ever changing and material to State Farm's investigation of this intentional fire. As such, Plaintiff violated the "concealment or fraud" condition to coverage of the Policy and State Farm is entitled to summary judgment on Plaintiff's breach of contract claim.

Moving on the Plaintiff's bad faith claim, State Farm contends that it is entitled to summary judgment on the bad faith claim because it was not obligated to pay under the Policy and it was  reasonably justified to deny coverage.

"[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 554 (1994). (citations

omitted.) Where a policy does not cover a claim, it cannot be bad faith to refuse to cover it. *Pasco v. State Auto. Mut. Ins. Co.*, 1999 WL 1221633, *5-6 (Ohio App. 1999)(unreported opinion). Thus, as this Court has already determined that Defendant was entitled to summary judgment on Plaintiff's breach of contract claim, it is also necessary to grant summary judgment on the bad faith claim because Plaintiff's numerous misrepresentations during State Farm's investigation furnished reasonable justification for State Farm's refusal to cover his claim. *See Taylor v. State Farm Fire & Cas. Co., supra*. at *7.

The only issue remaining is Defendant's Counterclaim on which it has not sought summary judgment. Plaintiff has moved for summary judgment on the Counterclaim on the ground that "if either of defendant's cited exclusions/conditions ("intentional acts" or concealment or fraud") are meritorious, then State Farm had no obligation to pay the mortgagee." (ECF #35 at 21.) Plaintiff's argument is refuted by the clear language of the Mortgage Clause upon which the Counterclaim is based:

> [i]f we deny your claim, that denial shall not apply to a valid claim of the mortgagee. ... If we pay the mortgagee for any loss and deny payment to you: (1) we are subrogated to all rights of the mortgagee granted under the mortgage on the property.

(Policy, Section I, Conditions, 10).  Accordingly, under the clear terms of the Policy, State Farm was required to pay a valid claim of the mortgagee, which it in fact paid. (ECF #32, Hedges Decl., ¶ 18; ECF #32-7, Correspondence to Wealthbridge) (After subtracting the deductible and deductions for demolition liens, State Farm tendered payment to Wealthbridge in the amount of $55,561.12 for the loss.) Thus, State Farm is subrogated to all rights of the mortgagee and is entitled to recover from Plaintiff the amount paid to the mortgagee Wealthbridge. Neither the language of the Policy nor the

15

payment to Wealthbridge is in dispute thus, there appears to be no question of material fact regarding State Farm's entitlement to summary judgment on its counterclaim for subrogation. Accordingly, Plaintiff's motion for summary judgment on Defendant's counterclaim is denied. Further, in accordance with Fed. R. Civ. P. 56(f)(1), the Court intends to grant summary judgment for State Farm on its counterclaim for subrogation. Pursuant to Fed. R. Civ. P. 56(f)(1) the parties have 15 days from the entry of this order to file any response, either in support or opposition, to the Court's intention to grant summary judgment in favor of State Farm on the counterclaim.

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF #31) is granted and Plaintiffs's Motion (ECF #34) is denied. Plaintiff's Motion to Strike (ECF #49) is denied. Further, the Court intends to grant summary judgment in favor of Defendant on its counterclaim for subrogation. Pursuant to Fed. R. Civ. P. 56(f)(1) the parties have 15 days from the entry of this Memorandum Opinion and Order to file any response, either in opposition or support, of the Court's intended ruling. The trial in this action currently scheduled for August 7, 2012 is cancelled.

IT IS SO ORDERED.

       /s/Donald C. Nugent
      DONALD C. NUGENT
      UNITED STATES DISTRICT JUDGE

DATED: July 26, 2012